Joseph **DRAGANOSKY**, Appellant,

v.

**MINNESOTA BOARD OF PSYCHOLOGY**, State of Minnesota, Respondent.

**No. C4–84–124.**

Court of Appeals of Minnesota.

June 26, 1984.

Linda E. Museus, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Audrey Kaiser Manka, Sp. Asst. Atty. Gen., Minneapolis, for respondent.

Heard, considered and decided by POPOVICH, C.J., and FORSBERG and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Appellant Joseph Draganosky appeals from the decision of the Minnesota Board of Psychology rendered in a contested case hearing. After a hearing on stipulated facts, at which the Board's chair presided, the Board denied appellant's request for a variance from its rule, 7 MCAR § 10.003A, requiring that he hold a doctorate degree from an institution that has been accredited by a regional accrediting association for consideration of his application for licensure as a licensed consulting psychologist.

We reverse.

## FACTS

The Minnesota Board of Psychology is an administrative agency authorized by statute to license and regulate the practice of psychology. Minn.Stat. § 148.88–148.98 (1982). Appellant, a graduate of Western Colorado University, sought a variance from the Board's requirements for licensure as a licensed consulting psychologist.

By statute, the Minnesota Legislature has created two levels of licensure in psychology: licensed consulting psychologist, (LCP) requiring a doctorate degree; and licensed psychologist, (LP) requiring a master's level degree. Minn.Stat. § 148.91

(1982). One of the statutory requirements for licensure as an LCP is a doctorate degree with a major in psychology from an educational institution "meeting standards which may be prescribed by regulation of the board." Minn.Stat. § 148.91, subd. 4(3) (1982). The educational standards established by the Board require that the doctorate be obtained from an institution "accredited by a regional accrediting association to grant a doctorate with a major in psychology." 7 MCAR § 10.003A. The institution must have been accredited at the time the degree was granted. 7 MCAR § 10.003C. The North Central Association of Colleges and Schools (NCA) is the regional accrediting association for the area in which Western Colorado University is located.

Appellant applied to the Board in July of 1979 for licensure as an LCP through reciprocity with Pennsylvania where appellant was licensed. On September 21, 1979, the Board denied appellant's application because Pennsylvania licensure requirements were not equal to or greater than those of Minnesota at the time of licensure and appellant did not meet Minnesota's experience requirements for licensure as an LCP. On December 8, 1979, appellant was granted licensure as an LP on the basis of successfully completing his examinations. By this time, appellant had passed his subjective written and oral examinations on the first try and had completed the objective test for professional practice in psychology with a score above the cutoff point required for an LCP.

On April 7, 1981, after appellant's reapplication, the Board informed appellant that it could not grant him licensure as an LCP without documentation from Western Colorado University that the school was a regionally accredited school. Because Western Colorado University was not accredited by NCA, appellant sought a variance. He submitted information from the National Association of Private Non-Traditional Schools and Colleges (NAPNSC), which accredited Western Colorado University on November 22, 1980, that it was equivalent or superior to a regional accrediting associ-

ation. On February 24, 1983, the Board denied appellant's request for a variance. Appellant then requested a contested case hearing on the matter of whether he should be granted licensure as an LCP. The parties agreed to stipulated facts which were presented to the Board with appellant's request for a variance. In a letter dated December 27, 1983, the Board notified appellant that it denied his request for a variance. Appellant filed a petition for a writ of certiorari with this court, pursuant to Minn.Stat. § 14.63 through 14.69 (1982 and Supp.1983), seeking judicial review.

## ISSUE

Whether the decision of the Board to deny appellant's request for a variance was arbitrary and capricious.

## ANALYSIS

Review of administrative decisions is narrowly prescribed. This court must uphold an agency's decision unless the decision is:

a) In violation of constitutional provisions; or

b) In excess of the statutory authority or jurisdiction of the agency; or

c) Made upon unlawful procedure; or

d) Affected by other error of law; or

e) Unsupported by substantial evidence in view of the entire record as submitted; or

f) Arbitrary or capricious.

Minn.Stat. § 14.69 (1982).

Although administrative decisions enjoy a presumption of correctness, a reviewing court cannot allow an agency decision which is arbitrary and capricious to stand. *Markwardt v. State Water Resources Board,* 254 N.W.2d 371 (Minn. 1977). If a reviewing court finds that an agency acted arbitrarily, it must remand to allow the agency to correct its errors. *Reserve Mining Co. v. State Pollution Control Agency,* 267 N.W.2d 720 (Minn.1978). An agency's action is arbitrary if its decision represents its will, rather than its judgment, *Western Auto Supply Co. v.*

*Commissioner of Taxation*, 245 Minn. 346, 71 N.W.2d 797 (1955), or if its decision has no rational basis. *Brown v. Wells*, 288 Minn. 468, 181 N.W.2d 708 (1970).

■ Because appellant did not graduate from an accredited school, he had to seek a variance from the Board's rules in order to be licensed. In requesting a variance, appellant had the burden to demonstrate that the variance should be granted. 7 MCAR § 10.009 provides in relevant part:

A variance shall be granted if the licensee or applicant specifies alternative practices or measures equivalent to or superior to those prescribed in the rule in question and provides evidence that:

1. the rationale for the rule in question can be met or exceeded by the specified alternative practices or measures;

2. adherence to the rule would impose an undue burden on the licensee or applicant; and

3. the granting of the variance will not adversely affect the public welfare.

An applicant for a variance has the burden of establishing that all of these requirements have been met. 7 MCAR § 10.009F. If the applicant fails to satisfy any one of the above requirements, the application for variance must be denied. The Board found that criteria one had not been met and did not specifically address criteria two and three.

Appellant asserts a number of arguments why the Board's decision denying his request for a variance is arbitrary or capricious.

Appellant argues that applicants receiving degrees from foreign institutions are treated differently from applicants receiving degrees from non-accredited domestic schools and that the difference in treatment is arbitrary and capricious. Unlike graduates of domestic schools, a graduate of a foreign school is not required to prove that his school is accredited. If it is not recognized in its own country as meeting the standards that the country has adopted for quality control, the applicant must seek a variance and submit documentation similar to that required of graduates of non-ac-

credited United States schools. However, the Board does not inquire into the standards each country has adopted for quality control, and, in one case in which a foreign graduate was required to submit documentation similar to that required of graduates of non-accredited United States schools, an undated letter from a professor at the school which listed work its graduates were qualified to perform was considered adequate by the Board.

Respondent admits that graduates from foreign schools are in similar situations to graduates of non-accredited U.S. schools, but argues that a rational basis exists for using different methods to evaluate graduates of foreign schools and graduates of non-accredited United States schools such as appellant. On the facts in this case we agree with appellant's position—the denial of his application for a variance to be an LCP was arbitrary and capricious.

The parties agreed to a well defined list of stipulated facts on which both sides rested and which the Board had before it in reaching its decision of denial. The written stipulation consisted of fifteen typewritten pages and thirty-two sections, with some of the sections containing lengthy subsections. For the sake of brevity, only portions of the stipulated sections which are essential for an understanding of appellant's position are reprinted in our analysis.

Appellant passed his subjective examination on the first try. On the objective examination he was required to take to be an LP, he obtained a score above the cutoff point for an LCP. Among the foreign applicants who were given licenses to be LCPs was an applicant who had failed two examinations before she finally passed the examination in 1980. The written stipulation in Sections 19, 20, 21, and 22 states as follows:

19. Dr. Barendina M. Numan applied for licensure as a licensed consulting psychologist on January 24, 1979, July 30, 1979 and March 15, 1980. Dr. Numan received her Ph.D. in November 1972 from Ryksuniversiteit Groningen, The

Netherlands. On April 9, 1979, Harriet Hartung, the Board's Executive Secretary, wrote to Dr. Numan requesting an official statement from the university verifying the fact that her doctorate was equivalent to a doctoral degree from an accredited university in the United States. In response to this request, a professor, Dr. J.J. van der Werff, wrote an undated declaration stating that Dr. Numan had five years of a program in psychology and that she was a qualified worker in all kinds of institutions, mental health guidance clinics and the like in the industry.

20. Dr. Numan failed the examination for licensed consulting psychologist two times before finally passing the examination in 1980.

21. Based upon the declaration of Dr. van der Werff and the successful completion of examinations, Dr. Numan was granted licensure as a licensed consulting psychologist on April 1, 1980.

22. Neither the University of Louvain nor Ryksuniversiteit Groningen are accredited by regional accrediting agencies.

Respondent argues that evaluation of an application by a foreign graduate presents so many problems, including translating foreign transcripts, verifying credentials and comparing course descriptions, that an independent evaluation of foreign schools and programs is difficult, if not impossible, and, therefore, the Board relies on *"whatever systems of quality control a foreign government may have developed."* (emphasis added). The respondent further argues that on the other hand non-accredited U.S. schools can be evaluated directly by the Board. It is difficult to accept respondent's position that, although it is impossible for the Board to make an independent determination of qualifications of foreign applicants, and it must thus rely on whatever standards the foreign country involved chooses to apply, the Board's personally evaluating and scrutinizing non-accredited domestic institutions is not arbitrary.

The stipulated facts in Sections 12, 13, 14, 15, 16, 17 and 18 are as follows:

12. Dr. Joseph O'Connor received a doctoral degree from the University of Ottawa, Canada in 1968 and was granted licensure as a licensed consulting psychologist in Minnesota in 1974.

13. Dr. Karen E. Brandt received a doctoral degree from the University of Waterloo, Waterloo, Canada in May 1976 and was granted licensure as a licensed consulting psychologist in Minnesota in 1980.

14. Dr. Daniel J. Anderson received his doctoral degree from the University of Ottowa [sic], Canada in May 1966 and was granted licensure as a licensed consulting psychologist in Minnesota in 1975.

15. *Neither* the University of Ottowa [sic] nor Waterloo University *are accredited by regional accrediting agencies.* (Emphasis added).

16. Drs. O'Connor, Brandt and Anderson *were not required* to present to the Board *that accreditation* or recognition *by another agency was* the *equivalent* or superior *to accreditation* by the regional accrediting agency. (Emphasis added).

17. Joseph J. Vaes received a licentiate in applied psychology and a licentiate in vocational guidance in September 1969 from the University of Louvain, Belguim. [sic]

18. Mr. Vaes *was not required to submit any documentation regarding* the *accreditation* of the University of Louvain; however, Mr. Vaes was granted licensure as a licensed consulting psychologist in Minnesota in 1975. (Emphasis added).

Appellant points out that the Board did not consider parts 2 and 3 of 7 MCAR § 10.009C in his case and, after deciding that the alternative accreditation of the institution from which he received his degree was not equivalent to the accreditation of a regional accrediting organization, went no further. The record discloses that the total background and personal qualifications of

foreign applicants were taken into consideration. Appellant argues the Board should consider his background and qualifications as well. We agree.

Appellant argues that, in accordance with the requirement of Section 3 of 7 MCAR § 10.009C, he established that the granting of the variance for him would not adversely affect the public welfare. The record, including appellant's experience and successful test scores, substantiates that claim. The Board has not shown that graduates of foreign institutions are more competent *per se* than graduates of institutions accredited by NAPNSC, and in fact a comparison of appellant's and Dr. Numan's test scores would show the reverse conclusion might be drawn. Appellant met the requirements of Section 2.

As to Section 2 of 7 MCAR § 10.009C, which involves undue hardship to the applicant for a variance, we have the following facts. Appellant produced a letter, which was undisputed, setting out the following economic differences between an LP and an LCP: (1.) Only LCP's are permitted to serve as hearing examiners at commitment hearings for mental patients; (2.) The LCP generally entitles a higher salary than an LP; (3.) Insurance routinely pays for the services of an LCP and psychiatrist, but not an LP. The appellant met the requirements of Section 2.

 The practical result of the Board's rules is that graduates of non-accredited domestic institutions must meet more stringent criteria than graduates of non-accredited foreign institutions, even though the program at a non-accredited domestic institution might be as good or better than the program at a foreign institution. Such a result is arbitrary and capricious.

The admission by respondent that the Board cannot legitimately and honestly perform an independent evaluation of foreign schools and their programs and must rely on whatever systems of quality control foreign governments may have developed has for an end result a practical requirement that graduates of domestic institutions have to meet higher standards than gradu-

ates of foreign institutions. The Board presents no facts to support that different treatment and still comply with 7 MCAR § 10.009C's requirement that the granting of the variance must not adversely affect the public welfare. Neither do we see in the record any facts to show that imposing a burden on graduates of foreign universities comparable to that imposed on Dr. Dragonosky would result in economic hardships to those graduates any more severe than the economic hardships to Dr. Draganosky.

In applying for licensure as an LCP, Dr. Draganosky was entitled to have his total personal and professional background and work experience evaluated in light of 7 MCAR § 10.009C, Sec. 2 and 3, in addition to having his school's accreditation examined. Any reasons the Board uses to treat applicants from foreign schools differently than applicants from domestic schools must be real, not fanciful. We reverse.

## DECISION

On the facts of this case, the denial of a variance for licensure as a licensed consulting psychologist was arbitrary and capricious. We remand to the Board with the direction to grant a variance.

Reversed and remanded.