## BUTLER BROTHERS *v.* McCOLGAN, FRANCHISE TAX COMMISSIONER OF CALIFORNIA.

No. 283. Argued February 12, 1942.—Decided March 2, 1942.

*Mr. Leland K. Neeves,* with whom *Mr. James S. Moore, Jr.* was on the brief, for appellant.

*Mr. Valentine Brookes,* Deputy Attorney General of California, with whom *Messrs. Earl Warren,* Attorney General, and *H. H. Linney,* Deputy Attorney General, were on the brief, for appellee.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This is an appeal (Judicial Code § 237 (a), 28 U. S. C. § 344 (a)) from a final judgment of the Supreme Court of California sustaining the validity of a statute of California against the claim that as construed and applied to appellant it violated the Fourteenth Amendment. 17 Cal. 2d 664, 111 P. 2d 334. The statute in question is the Bank and Corporation Franchise Tax Act. 2 Gen. L., Act 8488, p. 3851; Stat. 1929, p. 19; amended, Stat. 1931, p. 2226; Stat. 1935, p. 965. Sec. 4 (3) of that Act provides for an annual corporate franchise tax payable by a corporation doing business within the State. The tax is measured by the corporation's net income and is at the rate of four per cent "upon the basis of its net income" for the preceding year. The minimum annual tax is $25. Sec. 10 prescribes the method for computing the net income on which the tax is laid. It provides in part:

"If the entire business of the bank or corporation is done within this State, the tax shall be according to or measured by its entire net income; and if the entire business of such bank or corporation is not done within this State, the tax shall be according to or measured by that portion thereof which is derived from business done within this State. The portion of net income derived from business done within this State, shall be determined by an allocation upon the basis of sales, purchases, expenses of manufacturer, pay roll, value and situs of tangible property, or by reference to these or other factors, or by such other method of allocation as is fairly calculated to assign to the State the portion of net income reasonably attributable to the business done within this State and to avoid subjecting the taxpayer to double taxation."

The tax in dispute is for the calendar year 1936. Appellant paid the minimum tax of $25, asserting that it operated

in California during 1935 at a loss of $82,851. The tax commissioner made an additional assessment of $3,798.43 which appellant paid, together with interest, under protest. This suit was brought to recover back the amount so paid on the theory that the method of allocation employed by the tax commissioner attributed to California income derived wholly from business done without that State.

The facts are stipulated and show the following. Appellant is an Illinois corporation qualified to do business in California. Its home office is in Chicago, Illinois. It is engaged in the wholesale dry goods and general merchandise business, purchasing from manufacturers and others and selling to retailers only. It has wholesale distributing houses in seven states, including one at San Francisco, California. Each of its houses in the seven states maintains stocks of goods, serves a separate territory, has its own sales force, handles its own sales and all solicitation, credit and collection arrangements in connection therewith, and keeps its own books of account. For the period in question, all receipts from sales in California were credited to the San Francisco house. Appellant maintains a central buying division through which goods for resale are ordered, the goods being shipped by manufacturers to the houses for which they are ordered. All purchases made by appellant for sale at its various houses are made through that central buying division. The cost of the goods and the transportation charges are entered on the books of the house which receives the goods. No charges are made against any house for the benefit of appellant or any of its other houses by reason of the centralized purchasing. But the actual cost of operating the centralized buying division is allocated among the houses. The greater part of appellant's other operating expenses is incurred directly and exclusively at the respective houses. Certain items of expense are incurred and paid by appel-

lant for the benefit of all the houses and allocated to them. No question exists as to the accuracy of the amounts of such expense or the method of allocation. The latter admittedly followed recognized accounting principles. For the year 1935 the amount of such allocated expense charged to the San Francisco house was $100,091. For purposes of this suit it was agreed that approximately 75% of that amount would have been incurred even though the San Francisco house was not operated. The accuracy and propriety of the basis of allocation of those common expenses for 1935 were admitted. Included in such expenses were executive salaries, certain accounting expenses, the cost of operating a central buying division, and a central advertising division. Except for such common expenses, each house is operated independently of each other house. Appellant computed its income from the San Francisco house for the period in question by deducting from the gross receipts from sales in California the cost of such merchandise, the direct expense of the San Francisco house, and the indirect expense allocated to it. By that computation a loss of $82,851 was determined. In the year 1935, the operations of all houses of appellant produced a profit of $1,149,677. The tax commissioner allocated to California 8.1372 per cent. of that amount. That percentage was determined by averaging the percentages which (a) value of real and tangible personal property, (b) wages, salaries, commissions and other compensation of employees, and (c) gross sales, less returns and allowances, attributable to the San Francisco house bore to the corresponding items of all houses of appellant. No other factor or method of allocation was considered. The propriety of the use of that formula is not questioned if by reason of the stipulated facts a formula for allocation to California of a portion of appellant's income from all sources is proper.

The stipulation also states that, in the year 1935, the total sales made by appellant at all its houses amounted to $66,326,000, of which $5,206,000 were made by the San Francisco house. The purchases made for the account of that house were substantially in the same proportion to total purchases. By reason of the volume of purchases made by appellant, "more favorable prices are obtained than would be obtainable in respect of purchases for the account of any individual house." The addition of purchases "in an amount equal to the purchases made for the account of the San Francisco house results in no more favorable prices than could be obtainable in respect of purchases in an amount equal to the purchases which would be made" by appellant for its other houses if the San Francisco house was not in existence; and "a reduction in the volume of purchases in an amount equal to the purchases made for the San Francisco house would result in no less favorable prices being obtainable in respect of the purchases which would be made for the remaining houses" of appellant.

*Hans Rees' Sons* v. *North Carolina,* 283 U. S. 123, constitutes appellant's chief support in its attack on the formula employed and the tax imposed by California. Appellant maintains that the use of the formula in question resulted in converting a loss of $82,851 into a profit of over $93,500 and that the difference of some $175,000 has either been created out of nothing or has been appropriated by California from other states.

We take a different view. We read the statute as calling for a method of allocation which is "fairly calculated" to assign to California that portion of the net income "reasonably attributable" to the business done there. The test, not here challenged, which has been reflected in prior decisions of this Court, is certainly not more exacting. *Bass, Ratcliff & Gretton, Ltd.* v. *Tax Commission,* 266 U. S. 271; *Ford Motor Co.* v. *Beau-*

*champ,* 308 U. S. 331.   Hence, if the formula which was employed meets those standards, any constitutional question arising under the Fourteenth Amendment is at an end.

One who attacks a formula of apportionment carries a distinct burden of showing by "clear and cogent evidence" that it results in extraterritorial values being taxed.   See *Norfolk & Western Ry. Co.* v. *North Carolina,* 297 U. S. 682, 688.   This Court held in *Hans Rees' Sons* v. *North Carolina, supra,* p. 135, that that burden had been maintained on a showing by the taxpayer that "in any aspect of the evidence" its income attributable to North Carolina was "out of all appropriate proportion to the business" transacted by the taxpayer in that State. No such showing has been made here.

It is true that appellant's separate accounting system for its San Francisco branch attributed no net income to California.   But we need not impeach the integrity of that accounting system to say that it does not prove appellant's assertion that extraterritorial values are being taxed.   Accounting practices for income statements may vary considerably according to the problem at hand. Sanders, Hatfield & Moore, A Statement of Accounting Principles (1938), p. 26.   A particular accounting system, though useful or necessary as a business aid, may not fit the different requirements when a State seeks to tax values created by business within its borders.   Cf. Hamilton, Cost as a Standard for Price, 4 Law & Contemporary Problems 321.   That may be due to the fact, as stated by Mr. Justice Brandeis in *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113, 121, that a State in attempting to place upon a business extending into several States "its fair share of the burden of taxation" is "faced with the impossibility of allocating specifically the profits earned by the processes conducted within its borders."   Furthermore, the particular system

used may not reveal the facts basic to the State's determination. *Bass, Ratcliff & Gretton, Ltd.* v. *Tax Commission, supra,* p. 283. In either aspect of the matter, the results of the accounting system employed by appellant do not impeach the validity or propriety of the formula which California has applied here.

At least since *Adams Express Co.* v. *Ohio,* 165 U. S. 194, this Court has recognized that unity of use and management of a business which is scattered through several States may be considered when a State attempts to impose a tax on an apportionment basis. As stated in *Hans Rees' Sons* v. *North Carolina, supra,* p. 133, ". . . the enterprise of a corporation which manufactures and sells its manufactured product is ordinarily a unitary business, and all the factors in that enterprise are essential to the realization of profits." And see *Bass, Ratcliff & Gretton, Ltd.* v. *Tax Commission, supra,* p. 282. By the same token, California may properly treat appellant's business as a unitary one. Cf. *Great Atlantic & Pacific Tea Co.* v. *Grosjean,* 301 U. S. 412. There is unity of ownership and management. And the operation of the central buying division alone demonstrates that functionally the various branches are closely integrated. Admittedly, centralized purchasing results in more favorable prices being obtained than if the purchases were separately made for the account of any one branch. What the savings were and what portion is fairly attributable to the volume contributed by the San Francisco branch do not appear. But the concession that a reduction or addition of purchases "in an amount equal to the purchases made for the San Francisco house" would not result in higher or lower purchase prices respectively does not aid appellant's case. There is no justification on this record for singling out the San Francisco branch rather than another and concluding that it made no contribution to those savings. As aptly stated by the Supreme Court of California, "If the omission of the California sales would

have no effect on the purchasing power, the omission of sales in an equal amount wherever made would likewise have no effect on the company's ability to purchase at a saving. Thus, by proceeding in turn from state to state, it could be shown that none of the sales in any of the states should be credited with the income resulting from the purchasing of goods in large quantities." Nor are there any facts shown which permit the conclusion that the other advantages of centralized management (*Great Atlantic & Pacific Tea Co.* v. *Grosjean, supra*) are attributable to other branches but not to the one in California. The fact of the matter is that appellant has not shown the precise sources of its net income of $1,149,677. If factors which are responsible for that net income are present in other States but not present in California, they have not been revealed. At least in absence of that proof, California was justified in assuming that the San Francisco branch contributed its aliquot share to the advantages of centralized management of this unitary enterprise and to the net income earned.

We cannot say that property, pay roll, and sales are inappropriate ingredients of an apportionment formula. We agree with the Supreme Court of California that these factors may properly be deemed to reflect "the relative contribution of the activities in the various states to the production of the total unitary income," so as to allocate to California its just proportion of the profits earned by appellant from this unitary business. And no showing has been made that income unconnected with the unitary business has been used in the formula.

The stipulation of facts states that, if "the Court deems that it is bound by any inference or presumption respecting the assessment made by the Commissioner, or that this stipulation fails to establish any fact necessary to a decision, the case shall be reopened for the taking of further proofs in respect thereof." Appellant in its petition for

**510**

rehearing before the Supreme Court of California relied on that part of the stipulation in urging that the cause be remanded for a further hearing since that Court concluded that "appellant has not furnished any explanation of why its California business differs so from the average that the formula produced an erroneous result." The petition for rehearing was denied. Appellant now asserts that it has been denied procedural due process under the rule of *Saunders* v. *Shaw*, 244 U. S. 317. We do not agree. The Supreme Court of California created no innovation and sprung no surprise when it placed on appellant the burden of establishing that the formula taxed extraterritorial values. As we have noted, that is settled doctrine. Appellant had a full opportunity to be heard on the issues which it tendered.

*Affirmed.*