CRANE CO. *v.* CARSON, COMMISSIONER OF FINANCE AND
TAXATION.

(*Nashville,* December Term, 1949.)

Opinion filed July 15, 1950.

Certiorari Denied December 11, 1950.

See 71 S. Ct. 282

TABER, CHAMBLISS, SWAFFORD & CLAUNCH, of Chattanooga, for appellant.

ROY H. BEELER, Atty Gen., WILLIAM F. BARRY, Sol. Gen., and HARRY PHILLIPS, Asst. Atty. Gen., for appellee.

MR. JUSTICE GAILOR delivered the opinion of the Court.

The bills in these three consolidated causes were filed by Crane Company, an Illinois corporation, against the Commissioner of Finance and Taxation, to recover al-

leged overpayment of franchise and excise taxes for the years 1945, 1946, and 1947. The first suit seeks a recovery of $35,951.92, overpayment of excise tax for the years 1945 and 1946. The second suit seeks recovery of $6,055.28, representing franchise tax paid under protest for the year 1947. The third suit seeks recovery of excise tax paid under protest for the year 1947 in the sum of $46,253.05.

Defendant Commissioner filed answers to the bills, depositions were taken, and after hearing the cause and writing an excellent opinion which has come up with the record, the Chancellor entered a decree dismissing the bills. The complainant has appealed. The three bills were consolidated and heard together, both in the Chancery Court and in argument before us.

The case is controlled by the recent opinion of this Court in *American Bemberg Corporation* v. *Carson*, 188 Tenn. 263, 219 S. W. (2d) 169, unless on account of the peculiar system of accounting presented by the complainant for the first time in this case, the business operation of the complainant is to be distinguished from that considered in the American Bemberg case, supra.

The pertinent facts are these: The complainant is an Illinois corporation, engaged both in manufacturing and selling in Tennessee. It has a factory at Chattanooga, and retail sales outlets at Knoxville, Chattanooga, Nashville and Memphis. In addition to the factory at Chattanooga, complainant has a factory in Illinois and another in New Jersey. In addition to the retail outlets in Tennessee, complainant has sales branches in 130 cities throughout this country. It also does some international business. Products of its manufacture and sale are valves, pipes, cast iron, enamelware, heating and plumbing fixtures and equipment. In ad-

dition to manufacturing and selling its own products, complainant distributes and markets products of other manufacturers in the same field.

The principal business office of the corporation is in Chicago, and that office exercises control over all factories and sales outlets. Under the direction of its Chicago office, Crane Company pursues a system of accounting whereby the Chattanooga manufacturing plant is treated as a separate entity, its other two factories are treated as separate entities, and each of its 130 retail sales outlets is so treated. Under its system of accounting, complainant treated its Chattanooga plant operation as though it did not maintain any retail sales organization. During the war years appellant's Chattanooga factory was devoted to manufacturing material for war. And after the war, instead of merely converting that to peace-time use, the Chattanooga factory was much improved and enlarged. The factories of complainant theretofore operated at Bridgeport, Connecticut, and Tonawanda, New York, were moved to Chattanooga. The improvement and enlargement of the Chattanooga plant is reflected by the following table:

| In Calendar Year | Additions to Buildings | Additions to Machinery and Equipment |
|---|---|---|
| 1945 | $351,685.96 | $1,057,439.74 |
| 1946 | 282,495.27 | 928,063.61 |
| 1947 | 429,725.53 | 1,217,150.15 |

Increase in the annual payroll at Chattanooga was reflected by the following table:

| 1945 | $1,523,367.19 |
|---|---|
| 1946 | 3,171,517.87 |
| 1947 | 4,509,060.51 |

And purchase of raw material at Chattanooga was reflected by the following table:

| | |
|---|---|
| 1945 | $516,122.72 |
| 1946 | 1,093,144.42 |
| 1947 | 2,757,216.62 |

By the system of accounting adopted by complainant, enormous losses were shown on the manufacturing operation at Chattanooga, but the system of accounting failed to take into consideration the fact that manufacturing losses were more than offset by retail sales profits. In 1945, 1946, and 1947, after payment of Federal taxes, the net income of the complainant from its operation was:

| | |
|---|---|
| 1945 | $5,280,209.00 |
| 1946 | 10,342,949.00 |
| 1947 | 15,418,357.00 |

It was admitted in argument before us, and is shown by complainant's brief, that the only factor in this case which distinguishes its position from that of the taxpayers in *Reynolds Tobacco Company* v. *Carson,* 187 Tenn. 157, 213 S. W. 2d 45; *North American Bemberg Corporation* v. *Carson, supra,* is this system of accounting by which complainant shows a loss on its manufacturing operation at Chattanooga.

We think the issue is resolved against the complainant and in favor of the State by the decision of the Supreme Court of the United States in *Butler Bros.* v. *McColgan,* 315 U. S. 501, 62 S. Ct. 701, 86 L. Ed. 991. There, a substantially identical accounting operation was presented and adjudicated against the taxpayer and in favor of the taxing state. There, as here, the chief support of the taxpayer was the case of *Rees' Sons* v. *State of N. C.,* 283 U. S. 123, 51 S. Ct. 385, 75 L. Ed. 879, and the

Supreme Court refused to follow that decision. The taxpayer was engaged in the wholesale, drygoods and general merchandise business, purchasing from manufacturers and others, and selling to retailers. It had wholesale distributing houses in seven states, including one at San Francisco, California. By the system of accounting adopted by the taxpayer, income from the San Francisco house was computed for the period in question by deducting from the gross receipts from sales in California, the cost of merchandise, the direct expense of the San Francisco house, and the indirect expense allocated to it. By that computation a loss of $82,851 was shown. In the year in question the operation of all houses of appellant produced a profit of $1,149,677. Under the California tax formula, the Tax Commissioner determined the portion of net-income to be attributed to California, based on sales, purchases, expenses of manufacture, payroll, value and situs of tangible property, etc., at a little over 8% of the profit of $1,150,000. The Supreme Court of the United States, in a unanimous opinion, upheld the right of the State to tax, and in the course of the opinion, said: ''It is true that appellant's separate accounting system for its San Francisco branch attributed no net income to California. But we need not impeach the integrity of that accounting system to say that it does not prove appellant's assertion that extra-territorial values are being taxed. Accounting practices for income statements may vary considerably according to the problem at hand. Sanders, Hatfield & Moore. A Statement of Accounting Principles (1938), p. 26. A particular accounting system, though useful or necessary as a business aid, may not fit the different requirements when a State seeks to tax values created by business within its borders. Cf. Hamilton, Cost as a Standard for Price,

4 Law & Contemporary Problems 321. That may be due to the fact, as stated by Mr. Justice Brandeis in Underwood Typewriter Co. v. Chamberlain, 254 U. S. 113, 121, 41 S. Ct. 45, 47, 65 L. Ed. 165, [169], that a State in attempting to place upon a business extending into several States 'its fair share of the burden of taxation' is faced with the impossibility of allocating specifically the profits earned by the processes conducted within its borders.' Furthermore, the particular system used may not reveal the facts basic to the State's determination. Bass, Ratcliff & Gretton v. State Tax Commission, supra, 266 U. S. 271, at page 283, 45 S. Ct. 82, 69 L. Ed. 282, [287]. In either aspect of the matter the results of the accounting system employed by appellant do not impeach the validity or propriety of the formula which California has applied here.'' *Butler Bros.* v. *McColgan,* 315 U. S. 501, 62 S. Ct. 701, 704, 86 L. Ed. 996.

The Court further held that the taxing State might properly treat the business of Butler Brothers as ''a unitary one,'' citing in support of that holding, *Great Atlantic & Pac. Tea Co.* v. *Grosjean,* 301 U. S. 412, 57 S. Ct. 772, 81 L. Ed. 1193, 112 A. L. R. 293. From the opinion in *Butler Bros.* v. *McColgan,* supra, as it was applied by Judge GREEN in *General Shoe Corp.* v. *Stokes,* 181 Tenn. 286, 181 S. W. (2d) 146, to our own franchise and excise tax statutes, Code Sections 1248.143 et seq., 1316 et seq., we cannot escape the conclusion that the cost of manufacture is not the final factor, but that factor is the last stage in the taxpayer's operation. So here, the final stage in the complainant's operation is the retail sale. However, the sale is merely the act by which the income is captured which has been the result of the complainant's entire operation, commencing with the purchase of raw material, its manufacture, and the trans-

portation and distribution of the manufactured product to the final sale by the retail outlet. *Maxwell* v. *Kent-Coffey Mfg. Co.*, 204 N. C. 365, 168 S. E. 397, 90 A. L. R. 476. Affirmed 291 U. S. 642, 54 S. Ct. 437, 78 L. Ed. 1040. *American Bemberg Corp.* v. *Carson*, supra.

The Hans Rees case, 283 U. S. 123, 51 S. Ct. 385, 75 L. Ed. 87, which is here relied on by complainant, was relied on by the taxpayer in the General Shoe Corporation case, in the Reynolds Tobacco Co. case, and in the American Bemberg case. It would seem to be the principal prop from the Supreme Court of the United States for dissident taxpayers, but it is noteworthy that the Supreme Court has always refused to follow it in subsequent decisions, and has preferred to follow the Underwood Typewriter case, although the latter was an earlier decision of the Court by Judge BRANDEIS. In Tennessee the Hans Rees case has very limited application because the method of assessment employed in the North Carolina statute, which was the basis of the litigation, is basically different from that employed in the collection of our franchise and excise taxes. In the North Carolina statute the only factor used for computing the tax was the ratio between the property of the corporation in North Carolina and its property everywhere. No factors were employed to represent ratios of costs or sales. Therefore, when in the Hans Rees case it was shown that approximately all of the corporate property was in North Carolina, but approximately all of its sales were made in other states, and that applying the property formula only, North Carolina was undertaking to levy a tax on an 85% basis, it was held that the result was so arbitrary and unreasonable as to violate the due process and equal protection clauses of the 14th Amendment. We have no such situation here. The evidence

shows that for the years in question, 1945, 1946 and 1947, application of the statutory formulas, Code Section 1316; *American Bemberg Corp.* v. *Carson,* supra., résulted in allocating to Tennessee for taxation by the excise and franchise taxes the following percentages of net earnings and net worth:

|  | Excise | Franchise |
|------|--------|-----------|
| 1947 | 9.6586% | 13.3532% |
| 1946 | 8.1527% |  |
| 1945 | 5.3189% |  |

There was no multiple taxation because in 1945 only 67.40% of complainant's net earnings were used as a tax measure in all states, and 32.60% of complainant's earnings escaped taxation. In 1946 only 35.14% of complainant's net earnings were taxed in all states, and 64.86% of net earnings escaped taxation. In 1947 only 38.54% of complainant's net earnings were taxed in all states, and 61.46% of net earnings escaped taxation.

As the Chancellor properly found, all corporations in Tennessee which, during the war were devoted to war purposes, have suffered losses as a result of reconversion. However, on the present record, it is impossible to separate expenses of complainant in reconversion, and those incurred in the enlargement and permanent improvement of its plant at Chattanooga. We find nothing in this record to indicate an abuse of discretion by the Commissioner in refusing to apply a hardship formula, and in applying the regular statutory formulas for collection of franchise and excise taxes from the complainant, since application of the statutory formulas resulted in following percentages for the purpose of excise and franchise taxes for the years in question:

|  | Excise | Franchise |
|------|---------|-----------|
| 1947 | 9.6586% | 13.3532% |
| 1946 | 8.1527% | 10.6860% |
| 1945 | 5.3189% | 6.7945% |

When these percentages are considered in the light of complainant's annual payrolls, capital expenditures for enlargement and improvement of its plant, and its net income for the years involved, which figures we have quoted earlier in this opinion, there is nothing to indicate that application of the statutory formulas did not produce a fair and just result, nor to indicate that any right of the complainant under the 14th Amendment was infringed.

■ Only when the application of the statutory formulas results in an arbitrary and "palpably disproportionate" allocation to the State of income actually earned in another state, or net worth actually employed outside the borders of the taxing state, is there a violation of the 14th Amendment. *International Harvester Co.* v. *Evatt,* 329 U. S. 416, 67 S. Ct. 444, 91 L. Ed. 390, *American Bemberg Corp.* v. *Carson,* supra, and *Reynolds Tobacco Co.* v. *Carson,* supra. Mathematical nicety and precision of assessment is not required. All that is required for the protection of the taxpayer is that the assessment be fairly calculated to assign to Tennessee only that portion of net income and net worth reasonably attributable to business done in this State. *General Shoe Corp.* v. *Stokes,* supra, 181 Tenn. at page 289, 181 S. W. (2d) 146, citing *Butler Bros.* v. *McColgan,* supra; *Ford Motor Co.* v. *Beauchamp,* 308 U. S. 331, 60 S. Ct. 273, 84 L. Ed. 304; *Bass, Ratcliff & Gretton* v. *State Tax Commission,* 266 U. S. 271, 45 S. Ct. 82, 69 L. Ed. 282.

On the authorities cited, and for the reasons stated, all assignments of error are overruled, and the Chancellor's decree is affirmed.

All concur.