# WALGREEN COMPANY v. COMMISSIONER OF TAXATION.

104 N. W. (2d) 714.

August 5, 1960—No. 37,798.

*Irving Clark, Timothy J. Halloran,* and *Doherty, Rumble & Butler,* for appellant.

*Miles Lord,* Attorney General, and *Arthur C. Roemer,* Special Assistant Attorney General, for respondent.

THOMAS GALLAGHER, JUSTICE.

Action by Walgreen Company, an Illinois corporation, against Commissioner of Taxation of the State of Minnesota, to recover $15,498.43 plus interest for income taxes claimed to have been illegally assessed against and collected from plaintiff for the fiscal years ending September 30, 1950; September 30, 1951; September 30, 1952; and September 30, 1953.

524

Plaintiff contends that, in determining that part of plaintiff's net income attributable to Minnesota for income tax purposes, the commissioner arbitrarily used the 3-factor formula prescribed in M. S. A. 1949, § 290.19, subd. 1(1)(a, b, c), even though the separate or segregated accounting method used by plaintiff and prescribed in § 290.19, subd. 1(2)(b), more accurately disclosed such income; and that in consequence the income tax claimed for the years described was based upon income not attributable to or earned in Minnesota. The commissioner contends that the evidence sustains a finding that plaintiff was engaged in manufacturing in Minnesota during such years and that accordingly under § 290.19, subd. 1(1)(a, b, c), the use of the 3-factor formula was compelled; and further that even though it be determined that plaintiff was not engaged in the manufacturing business the evidence sustains the trial court's finding that the 3-factor formula reasonably reflected that part of plaintiff's net income attributable to Minnesota, and hence under § 290.19, subd. 1(2)(b), was applicable. The commissioner's determination was affirmed on appeal to the district court which ordered judgment in his favor. The present appeal is from such judgment.

Plaintiff's principal office during the years involved was in Chicago, Illinois. It operated retail drugstores in Minnesota and eight other states. Fourteen of such stores were within Minnesota and 191 of them were outside this state. In addition, it operated a substantial number of Minnesota agencies under franchises which authorized local retail drugstore owners to use its name and to purchase their stocks of merchandise from it. Each retail drugstore had a local manager and was supervised by a district manager. Plaintiff maintained warehouses in Chicago and Minneapolis. A large portion of the merchandise bought for all of its Minnesota stores and agencies came from its Minneapolis warehouse. Accounting for all stores was centralized in the executive offices in Chicago. The district managers and store managers were trained under the supervision of the central office in Chicago.

A part of plaintiff's business in Minnesota then consisted of the manufacture and sale of ice cream. The gross annual sales from this source in Minnesota were approximately $200,000, of which $4,000

came from sales outside the state. Plaintiff's gross Minnesota sales of all other products, none of which it manufactured here, were in excess of $4,000,000 annually.

Under its separate accounting method for the years in question, all sales from its Minnesota stores, its warehouse in Minneapolis, and its ice-cream plant there were included in its gross sales figure. Thereafter the cost of goods sold was deducted from gross sales, and to the resulting figure, items of other income not in dispute were added. From this result expenses and other deductible items were subtracted. These deductions amounted to approximately $1,500,000 for the fiscal year ending 1950; $1,600,000 for the fiscal year ending 1951; $1,700,000 for the fiscal year ending 1952; and $1,600,000 for the fiscal year ending 1953. These deductions fell into what plaintiff designated as direct and indirect expenses of doing business in Minnesota. The direct deductions were those incurred here including rent, salaries to Minnesota employees, advertising in Minnesota newspapers, and like items. All such expenses were allowed by defendant as proper. As indirect expenses allocated to Minnesota, plaintiff deducted approximately $130,000 for each of the four years in question. Such deductions related to the general and administrative expenses incurred in the operation of the central office in Chicago.

Plaintiff submitted a compilation which indicated certain differences in net income attributable to Minnesota as determined under its separate accounting system and as determined under the 3-factor formula applied by the commissioner as follows:

| Fiscal Year Ending | National Net Income | Minnesota Net Income, Separate Accounting Method | Minnesota Net Income, 3-Factor Formula |
|---|---|---|---|
| Sept. 30, 1950 | $4,683,825 | ($14,657.46) loss | $ 98,265.55 |
| Sept. 30, 1951 | 3,226,669 | 47,542.45 | 122,550.53 |
| Sept. 30, 1952 | 2,815,762 | (63,803.79) loss | 115,194.26 |
| Sept. 30, 1953 | 2,527,707 | (64,802.09) loss | 113,823.04 |

During these same years, exhibits submitted indicated that national sales (after cost of goods sold) and Minnesota sales (after cost of goods sold) compared as follows:

| | National | Minnesota |
|---|---|---|
| 1950 | $28,685,125 | $1,539,355 |
| 1951 | 29,941,617 | 1,664,580 |
| 1952 | 28,571,655 | 1,640,968 |
| 1953 | 28,400,530 | 1,544,168 |

Plaintiff directs attention to the fact that if all indirect expenses allocated under its separate accounting method to Minnesota, which averaged approximately $130,000 for each of the four years in question, were eliminated, the result would still be taxation of outside income as follows:

| Fiscal Year Ending | Minnesota Net Income, Separate Accounting Method | Minnesota Net Income, Separate Accounting Method, Disallowing Outside Expense | Minnesota Net Income, 3-Factor Formula |
|---|---|---|---|
| Sept. 30, 1950 | ($14,657.46) loss | $115,342.54 | $ 98,265.55 |
| Sept. 30, 1951 | 47,542.45 | 177,542.45 | 122,550.53 |
| Sept. 30, 1952 | ( 63,803.79) loss | 66,196.21 | 115,194.26 |
| Sept. 30, 1953 | ( 64,802.09) loss | 65,197.91 | 113,823.04 |
| Total | ($95,720.89) loss | $424,279.11 | $449,833.38 |

The statute applicable to the years involved in the suit, M. S. A. 1949, § 290.19, subd. 1, read as follows:

"The taxable net income from a trade or business carried on partly within and partly without this state shall be computed by deducting from the gross income of such business, wherever derived, deduction

of the kind permitted by section 290.09 so far as connected with or allocable against the production or receipt of such income. The remaining net income shall be apportioned to Minnesota as follows:

"(1) *If the business consists of the manufacture in Minnesota* or within and without Minnesota of personal property and the sale of said property within and without the state, the remainder shall be apportioned to Minnesota on the basis of the percentage obtained by taking the arithmetical average of the following three percentages:

"(a) The percentage which the sales made within this state and through, from or by offices, agencies, branches or stores within this state is of the total sales wherever made;

"(b) The percentage which the total tangible property, real, personal, and mixed, owned or used by the taxpayer in this state in connection with such trade or business is of the total tangible property real, personal, or mixed, wherever located, owned, or used by the taxpayer in connection with such trade or business; and,

"(c) The percentage which the taxpayer's total payrolls paid or incurred in this state or paid in respect to labor performed in this state in connection with such trade or business is of the taxpayer's total payrolls paid or incurred in connection with such entire trade or business;

\* \* \* \* \*

"(2) (a) In all other cases the proportion of such remainder to be assigned to this state shall be that which the sales, gross earnings, or receipts from business operations, in whole or in part, within this state bear to the total sales, gross earnings, or receipts from business operations wherever conducted;

"(b) If the methods prescribed under clause (2) (a) will not properly reflect taxable net income assignable to the state, there shall be used, if practicable and if such use will properly and fairly reflect such income, the arithmetical average of the three percentages set forth in clauses (1) (a), (1) (b), and (1) (c), of this section, or the separate or segregated accounting method." (Italics supplied.)

On appeal plaintiff contends that (1) by its application of the 3-factor formula defendant is taxing income not attributable to plaintiff's activities in Minnesota in contravention of the due-process clause of

U. S. Const. Amend. XIV; (2) where plaintiff produced only approximately $200,000 worth of ice cream annually in its Minneapolis plant, all of which it sold to Minnesota customers with the exception of $4,000 worth sold outside the state, and where its sales from other products in Minnesota were in excess of $4,000,000, it was error to determine that under § 290.19, subd. 1(1), its business was that of manufacturing so as to compel application of the 3-factor formula referred to in this statute; (3) plaintiff's separate accounting method established that, after deducting from its gross Minnesota income expenses actually incurred in Minnesota, non-Minnesota income was being unlawfully taxed by defendant as a result of his application of the 3-factor formula; and (4) the evidence compels a finding that plaintiff's separate accounting method properly and fairly reflects the portion of plaintiff's taxable income assignable to Minnesota and hence should be applied by defendant in determining plaintiff's taxable income here.

■ Plaintiff does not assign as error or otherwise challenge the court's finding that it is a unitary business, and the evidence above outlined amply supports such a finding. Western Auto Supply Co. v. Commr. of Taxation, 245 Minn. 346, 71 N. W. (2d) 797. Likewise, both plaintiff and defendant concede that the sales formula alone as defined in § 290.19, subd. 1(2)(a), is not applicable here. With respect to the 3-factor formula, if the evidence supports a finding that plaintiff's business consists of manufacturing in Minnesota for sale of products within and without the state, the statute requires the commissioner to apply it in determining net income attributable to Minnesota. If plaintiff is not so engaged, the 3-factor formula is applicable under § 290.19, subd. 1(2)(b), if it more fairly reflects the portion of plaintiff's net income attributable to Minnesota than does the sales formula or the separate accounting method.

■ The 3-factor formula[1] as against the separate accounting method

---

[1]See National Tax Association, Proceedings of 44th Annual Conference 1951, p. 458, where it was stated:

"No method of allocation can precisely determine the exact amount of income attributable either to any given geographic area or to any given

has been upheld on numerous occasions,[2] even where the separate accounting method has attributed a lower or in fact no taxable income to the taxing state. Butler Bros. v. McColgan, 315 U. S. 501, 507, 62 S. Ct. 701, 704, 86 L. ed. 991, 996. There the court stated:

"It is true that appellant's separate accounting system for its San Francisco branch attributed no net income to California. But we need not impeach the integrity of that accounting system to say that it does not prove appellant's assertion that extraterritorial values are being taxed. Accounting practices for income statements may vary considerably according to the problem at hand. Sanders, Hatfield & Moore, A Statement of Accounting Principles (1938), p. 26. A particular accounting system, though useful or necessary as a business aid, may not fit the different requirements when a State seeks to tax values created by business within its borders."

---

part of a series of business transactions culminating in the realization of a profit, and any effort in that direction 'must be more or less arbitrary and fictitious.' However, it was found that the factors of property, payroll, and sales generally reflect all income-producing functions of the business activities covered by this rule. * * *

\* \* \* \* \*

"* * * approximately half of the states having net income tax laws already provide for the use of a formula consisting of these three factors. The states are: California, Connecticut, Georgia, Idaho, Louisiana, Massachusetts, Minnesota, Mississippi, Montana, New York, North Carolina, North Dakota, Oregon, Pennsylvania, Rhode Island, Utah, and Vermont."

[2]Butler Bros. v. McColgan, 315 U. S. 501, 62 S. Ct. 701, 86 L. ed. 991; Edison California Stores, Inc. v. McColgan, 30 Cal. (2d) 472, 183 P. (2d) 16; El Dorado Oil Works v. McColgan, 34 Cal. (2d) 731, 215 P. (2d) 4; Crane Co. v. Carson, 191 Tenn. 353, 234 S. W. (2d) 644, certiorari denied, 340 U. S. 906, 71 S. Ct. 282, 95 L. ed. 655; John Deere Plow Co. v. Franchise Tax Board, 38 Cal. (2d) 214, 238 P. (2d) 569, appeal dismissed, 343 U. S. 939, 72 S. Ct. 1036, 96 L. ed. 1345; State Tax Comm. v. John H. Breck, Inc. 336 Mass. 277, 144 N. E. (2d) 87; Matter of Teague v. Goodrich, 4 App. Div. (2d) 984, 167 N. Y. S. (2d) 820; Gulf Oil Corp. v. Morrison, 120 Vt. 324, 141 A. (2d) 671; Western Auto Supply Co. v. Oklahoma Tax Comm. (Okl.) 328 P. (2d) 414; Western Auto Supply Co. v. Commr. of Taxation, 245 Minn. 346, 71 N. W. (2d) 797.

■ That application of the 3-factor formula may result in some overlapping of measures of net income as between states is not fatal to the honest efforts of a state to determine what would be a fair approximation of the income of a multistate unitary business, State Tax Comm. v. John H. Breck, Inc. 336 Mass. 277, 144 N. E. (2d) 87, and the fact that conditions or costs may vary from state to state in the operation of a unitary business does not affect the propriety of the application of the formula, since the mutual dependence of the interrelated activities in furtherance of the entire business sustains the apportionment process. John Deere Plow Co. v. Franchise Tax Board, 38 Cal. (2d) 214, 238 P. (2d) 569, appeal dismissed, 343 U. S. 939, 72 S. Ct. 1036, 96 L. ed. 1345; Western Auto Supply Co. v. Commr. of Taxation, *supra*. The taxpayer's burden is not satisfied by proof that separate accounting allocates less income to the state. Western Auto Supply Co. v. Commr. of Taxation, *supra*. It must establish that application of the 3-factor formula results in a grossly inequitable allocation of such income. Edison California Stores, Inc. v. McColgan, 30 Cal. (2d) 472, 183 P. (2d) 16.

■ As we construe § 290.19, subd. 1(2)(b), a certain discretion is vested in the commissioner to determine whether application of the 3-factor formula fairly and properly reflects the net income attributable to Minnesota of a multistate unitary business, or whether the separate accounting method reaches this objective more accurately. Western Auto Supply Co. v. Commr. of Taxation, 245 Minn. 346, 358, 71 N. W. (2d) 797, 805. To upset his choice of methods here, plaintiff must establish that its business is not that of manufacturing; and that application of the 3-factor formula under § 290.19, subd. 1(2)(b), has resulted in taxing such a substantial part of its income not attributable to Minnesota as to make the allocation grossly inequitable and invalid under the due-process clause of U. S. Const. Amend. XIV. On the other hand, if the evidence fairly supports the finding that application of the 3-factor formula has resulted in a reasonable reflection of its net income fairly apportionable to Minnesota, then even though this method may not have produced the most accurate or precise results, we have no choice but to approve it.

■ Under the principle established in Butler Bros. v. McColgan, 315 U. S. 501, 62 S. Ct. 701, 86 L. ed. 991, and adhered to in Western Auto Supply Co. v. Commr. of Taxation, 245 Minn. 346, 71 N. W. (2d) 797, and Crane Co. v. Carson, 191 Tenn. 353, 234 S. W. (2d) 644, certiorari denied, 340 U. S. 906, 71 S. Ct. 282, 95 L. ed. 655, we are of the opinion that the commissioner's determination to apply the 3-factor formula should be approved. While plaintiff's separate accounting method for the years in question has disclosed substantially less net income attributable to Minnesota than does application of the 3-factor formula, this is not a vital factor in determining whether the latter procedure has resulted in a fair reflection of plaintiff's net income taxable in Minnesota. Thus in Butler Bros. v. McColgan, *supra,* under the taxpayer's separate accounting method, a loss of $82,851 in California was indicated, while application of the 3-factor formula determined that $93,551.52 of the taxpayer's net income was apportionable to California—a difference of $176,402.52 for the year involved. In sustaining application of the 3-factor formula, the United States Supreme Court disregarded this as controlling on the theory that separate accounting practices vary according to the problem at hand and that though useful as a business aid they may not fit requirements when a state seeks to tax values created by business within its borders.

Likewise, in Western Auto Supply Co. v. Commr. of Taxation, *supra,* the taxpayer's separate accounting method for the year in question showed a net taxable income of $20,996.57 apportionable to Minnesota while the 3-factor formula attributed $47,836.48, more than double the taxpayer's figure. There in answer to the claim that such results established that the state was taxing income not properly assignable to it, we said (245 Minn. 359, 71 N. W. [2d] 806):

"While the taxpayer's separate accounting method may be quite suitable for taxpayer's business purposes, it nevertheless seems definitely inadequate for the purpose of attributing to Minnesota with a fair degree of accuracy that portion of the taxpayer's income which was earned by its Minnesota operations * * *.

"* * * It must be recognized that even the so-called separate accounting system cannot be kept with exactness."

And so also in Crane Co. v. Carson, *supra,* where the taxpayer's separate accounting method for a 3-year period indicated enormous losses, the court upheld the tax commissioner's application of the 3-factor formula which established that $88,260.25 in franchise and excise taxes were due on taxpayer's net income attributable to the state for the years involved. Basically, approval of the application of the 3-factor formula rests upon a conclusion expressed in most of the cited cases that in multistate unitary operations the separate accounting method is inherently incapable of accurately allocating income. Based upon the authorities cited and for the reasons expressed, we must uphold the commissioner's election to apply the 3-factor formula here. Because of this conclusion, it is not necessary to determine whether plaintiff, because of its production in Minneapolis of ice cream for sale within and without the state, is in the business of manufacturing within the concept of § 290.19, subd. 1(1)(a, b, c).

Affirmed.

MR. JUSTICE LOEVINGER, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.