MAURICE L. ROTHSCHILD & COMPANY v. COMMISSIONER OF TAXATION.

133 N. W. (2d) 524.

February 5, 1965—No. 39,284.

*Best, Flanagan, Lewis, Simonet & Bellows,* for relator.

*Walter F. Mondale,* Attorney General, and *Jerome J. Sicora,* Assistant Attorney General, for respondent.

FRANK T. GALLAGHER, C.

Certiorari to review a decision of the Board of Tax Appeals affirming an order of respondent, the commissioner of taxation, assessing additional income and franchise tax against relator-taxpayer, Maurice L. Rothschild & Company, for the fiscal year ending January 31, 1956.

The relief sought by taxpayer is a reversal of an order of the board in effect denying taxpayer permission to file its Minnesota income tax return for said year on the basis of separate accounting method.

This case is concerned with the taxability as corporate income of certain insurance recoveries amounting to $1,349,542 received in the fiscal year ending January 31, 1956, as a result of a fire which occurred in taxpayer's Chicago store on July 15, 1955. Taxpayer contends that the insurance proceeds caused it to receive abnormally large amounts of income in Chicago, while the commissioner contends that they cannot be classified as abnormal income.

The legal question raised is whether the taxable income allocable

to Minnesota is to be determined by the separate accounting or three-factor formula.

Taxpayer's business consisted entirely of the operation of six retail stores, three in the Twin Cities area and three in the Chicago area, all selling men's, boys', women's, and girls' clothing.

Inasmuch as the factual-legal issue in this case centers on the degree of integration and interdependence of the business in the Chicago area stores with that of the Twin Cities area stores, taxpayer presented testimony by Ora D. Gay, a former vice president and treasurer, with respect to the method of operation of both groups of stores. Mr. Gay, a certified public accountant, was employed by taxpayer from 1944 to 1959 in Minneapolis, and prior to that time he was in the employ of an accounting firm in Chicago which handled the Rothschild audit. He was therefore familiar with the conduct of taxpayer's business in both the Chicago and Twin Cities areas. Much of his testimony is reflected in the board's findings.

Operating results of the Chicago stores were compared with the Minnesota stores and the effect upon corporate earnings of the Chicago fire in July 1955 was described by William Templeton, another witness called by taxpayer. He is a Chicago certified public accountant who had supervised the audit of taxpayer's business and had been acquainted with it for about 20 years.

The board found, on the basis of a stipulation of facts, the testimony, and exhibits, that taxpayer's Minnesota income tax for years prior to 1956 and for all years after that fiscal year until the stores were sold in 1962 was determined by the three-factor formula of property, payroll, and sales; that for the fiscal year ending January 31, 1956, taxpayer filed its Minnesota return on a separate accounting basis, contending that because of the fire in the Chicago store on July 15, 1955, and the collection of insurance proceeds thereon, the use of the three-factor formula was not practicable and did not properly and fairly reflect its income taxable in Minnesota, whereas the use of the separate accounting method did.

The board also found that as a result of the fire the Chicago store was closed from July 15 to August 1, 1955, and that insurance pro-

ceeds collected as a result of the fire were credited on taxpayer's books as follows:

> "Total insurance recoveries      $1,349,542
>
> "Credited to:
>
> "Cost of goods sold—merchandise destroyed, damaged, soiled, etc.—some sold for salvage      582,448
>
> "Other operating income—loss of gross profit on sales during period store was closed      129,948
>
> "Building restoration, replacement of furniture, fixtures, carpets, supplies, etc.
> Customers' claims
> Watchmen, cleanup, etc.      417,562
>
> "Accounts payable—unexpended balance to complete restoration of building and replacement of furniture, fixtures, etc. and to pay additional customers' claims      219,583
>
> _____
>
> "Total, as above      $1,349,542"

In explanation of these allocations on taxpayer's books, Mr. Templeton said that the recovery of $582,448 for smoke damage was not considered to be a sale of merchandise in the ordinary course of business, being abnormal in amount and occurring because of an "act of God," and consequently was not treated as a sale on taxpayer's books but was credited to cost of merchandise. He said also that the recovery of $129,948 was business-interruption insurance and was credited to "other operating income," being reimbursement for gross income lost while the Chicago store was closed; that the $417,512 was insurance proceeds for damage to the building and was paid to the owner of the building leased by taxpayer; and that the $219,583 was spent for building restoration, payment of customers' claims, etc.

The board also found that exhibits introduced as part of the stipulation of facts show a comparison for the fiscal years ending January 31, 1955, 1956, and 1957, of net sales, operating income, and percentages of gross profits for the Chicago store and all other Illinois and Minnesota stores operated by taxpayer; that exhibit A shows the net sales of all stores, including the Chicago store, to be fairly consistent and shows a small percentage increase in 1956 over both 1955 and 1957; that exhibit B shows total operating income of all stores other than the Chicago store for all three fiscal years to be fairly constant; that for the Chicago store the operating income for 1955 was $2,506,101; for 1956, $3,001,731; and for 1957, $2,449,560; that percentagewise for the Chicago store in 1956 there was an increase over 1955 of 19.8 percent, and an increase over 1957 of 22.6 percent; that exhibit C shows that the percentage of gross profit on sales for all stores other than the Chicago store for these same three years was also fairly constant, averaging slightly over 38 percent; and that the percentage for the Chicago store for 1955 was 40.37 percent; for 1956, 45.80 percent; and for 1957, 40.29 percent.

The board also found that the operating income for the Chicago store for 1956 included the $582,448 recovered by insurance for goods damaged and destroyed and the $129,948 recovered for loss of profits during the period the store was closed; that in effecting the settlement with the insurance company for goods damaged and destroyed, the basis used by the negotiators was actual cost rather than the depreciated inventory basis used in taxpayer's accounting system and that this, plus a good negotiator, resulted in the figure of $582,448; that according to taxpayer's method of accounting the cost of the goods damaged and destroyed as shown by exhibit E was $263,476 and resulted in an abnormal insurance recovery of $318,972.[1]

---

[1]We shall not attempt to set out in detail Mr. Templeton's testimony as to how the so-called "abnormal income from insurance recovery" was calculated. It is apparent from the record—and so the board found—that this "abnormal income" to taxpayer resulted from a very favorable insurance settlement. In Mr. Templeton's opinion taxpayer "benefited greatly by the efforts of a good negotiator."

It was the further finding of the board that the Minnesota stores had their own purchasing office, their own merchandise managers and buyers, and their own buying office in New York; that separate decisions were made by each store with respect to quantity and type of merchandise purchased, especially in women's wear; that although each store determined its own needs, it could not change any brand name carried without consultation and approval of all the officers; that each store maintained its own accounting records and handled its own accounts receivable and payable and had its own bank account; that the president, vice president, and treasurer of taxpayer were full-time employees residing in Chicago, and that four full-time vice presidents resided in Minnesota; that store employment and personnel problems were handled separately by each store and labor relations and labor contracts were handled locally; that the name of taxpayer was Maurice L. Rothschild & Company in Illinois and Maurice L. Rothschild—Young-Quinlan Company in Minnesota; that in 1962 it sold all its stores and that the Illinois stores and the Minnesota stores were sold to two different purchasers in separate transactions.

In findings which taxpayer contends are not sustained by the evidence, the board further found that frequent consultations between the management of the Chicago and Minnesota stores were held concerning fast-moving items and overall policy; that slow-moving merchandise in one store or area would occasionally be shipped to other stores for possible better and faster disposition; that although many lines of merchandise carried in the Chicago store differed from those carried in the Minnesota stores, the basic lines in men's and women's clothing and in men's shoes were the same; that because of this, price concessions resulted due to volume purchases and there was faster service on reorders and greater advertising allowances by the manufacturer.

It was the further finding of the board that although each store operated to a large extent independently of the other stores, there existed sufficient integration between all the stores so that for purposes of allocation of income for tax purposes taxpayer's business was a unitary business; that for the fiscal year 1956, 53.6137 percent of taxpayer's total sales were made within Minnesota; that the application of the

three-factor formula resulted in an allocation of 51.85997 percent of taxpayer's net income to Minnesota; and that by the use of the separate accounting method submitted by taxpayer only 40.8065 percent of taxpayer's net income was allocated to Minnesota.

The board further found that even though the gross profit of the Chicago store for fiscal 1956 was greater than its average for 1955 and 1957—due mainly to the fortunate insurance recovery—while the gross profit of all other stores during this same period was fairly constant, the application of the three-factor formula did not improperly reflect taxpayer's Minnesota taxable net income. The board therefore affirmed the order of the commissioner assessing additional taxes.

Taxpayer contends that it did not operate a unitary business; that the Minnesota and Illinois stores were operated as separate enterprises; and that the commissioner erred in denying it the election of making a separate accounting. It claims that that method properly and fairly reflects its taxable net income assignable to Minnesota in fiscal 1956 and that if the three-factor formula is applied it will improperly tax income earned entirely outside of Minnesota.

On the other hand, the commissioner claims that taxpayer's business is unitary and that the statutory three-factor formula does properly reflect the taxable income of a unitary business where the business experience outside the taxing state is unusual in the particular tax year.

The applicable statute is Minn. St. 290.19. It provides for the use of the three-factor formula of sales, property, and payroll for apportionment of income from a business carried on partly within and partly without Minnesota. It then provides in subd. 1(2)(b):

"If the methods prescribed under clause (2) (a) will not properly reflect taxable net income assignable to the state, there may be used, if practicable and if such use will properly and fairly reflect such income, the percentage which the sales, gross earnings, or receipts from business operations, in whole or in part, within this state bear to the total sales, gross earnings, or receipts from business operations wherever conducted; or the separate or segregated accounting method."

Subd. 2 provides:

"The methods prescribed by subdivision 1 shall apply wherever and

in so far as the business carried on within this state is an integral part of a business carried on both within and without this state."

Minn. St. 290.20 states that the methods prescribed by § 290.19 shall be presumed to determine fairly and correctly the taxpayer's net income allocable to this state, but further provides that any taxpayer feeling aggrieved by the application to his case of the methods so prescribed may petition the commissioner for determination of such net income by the use of some other method, including separate accounting, and that, if the commissioner finds that the application of the method prescribed by § 290.19 will be unjust to the taxpayer, he may allow the use of the methods petitioned for or may determine such net income by other methods if he is satisfied that such other methods will fairly reflect such net income. (It is conceded that taxpayer filed the proper petition under § 290.20, requesting the use of the separate accounting method rather than the three-factor formula.)

In a memorandum accompanying its decision, the board states that it is undisputed that the three-factor formula prescribed by § 290.19 must be used unless it can be shown that such formula does not properly reflect income assignable to Minnesota and that the burden of proof rests with the taxpayer. It further states that the taxpayer concedes that separate accounting is not feasible for a unitary business, but contends that its business is not unitary or integrated to the extent contemplated by our laws or the courts.

In determining whether a multistate business is unitary or not, we said in Western Auto Supply Co. v. Commr. of Taxation, 245 Minn. 346, 355, 71 N. W. (2d) 797, 804:

"* * * A multistate business is a unitary business when the operations conducted in one state benefit and are in turn benefited by the operations conducted in another state or states. The test to be applied in determining whether a business is a unitary one is based upon the following inquiry: Is the operation of the business within the state 'dependent upon or contributory to the operation of the business outside the state'? * * *

* * * * *

"The test of whether a business is unitary is whether its various

parts are interdependent and of mutual benefit so as to form one business unit rather than separate business entities and not whether the operating experience of the parts is the same in all places."

See, also, Walgreen Co. v. Commr. of Taxation, 258 Minn. 522, 104 N. W. (2d) 714.

Both parties cite Western Auto Supply Co. v. Commr. of Taxation, *supra,* and Walgreen Co. v. Commr. of Taxation, *supra,* as controlling.

Western was before us on certiorari to review a decision of the Board of Tax Appeals affirming an order of the commissioner of taxation which disallowed Western's use of the separate accounting method in its 1947 income and franchise tax return and assessed additional tax on the basis of the three-factor formula provided for in § 290.19. Western was a Missouri corporation engaged in the retail and wholesale merchandising of automotive parts and accessories and other merchandise on a nationwide basis. During the calendar year 1947, it operated 257 retail stores in 30 states and the District of Columbia, and 8 of such stores were in Minnesota. It also served 1,904 stores, of which 5 to 7 were located in Minnesota. All general, executive, and management functions of the taxpayer were performed in its home office in Kansas City, Missouri, with the exception of certain management functions which were performed at 16 division warehouse offices, none of which were located in Minnesota. The centralized purchasing was done by trained personnel whose department was located in Kansas City, deliveries being made to company and dealer stores through the various division warehouses. The Minnesota stores sent their orders to their division warehouse at Dubuque, Iowa, or the home office in Kansas City, being serviced mainly by the Dubuque warehouse. The merchandise furnished to both the company retail stores and the dealer stores was the same, and the stores on the whole were more or less uniform in each state. We concluded that such evidence justified the board's determination in affirming the commissioner's application of the three-factor formula as properly and fairly reflecting the net income of the taxpayer assignable to Minnesota.

Walgreen Co. v. Commr. of Taxation, *supra,* was an action for

the recovery of income taxes which Walgreen claimed it was illegally required to pay. Walgreen's principal office during the years involved was in Chicago. It operated retail stores in Minnesota and 8 other states, 14 of which stores were in Minnesota and 191 outside of the state. In addition, it operated a substantial number of Minnesota agencies under franchises which authorized local retail drugstore owners to use its name and purchase their stocks of merchandise from it. Each retail store had a local manager and was supervised by a district manager. Walgreen maintained warehouses in Chicago and Minneapolis. A large portion of the merchandise bought for all of its Minnesota stores and agencies came from its Minneapolis warehouse. Accounting for all stores was centralized in the executive offices in Chicago. The district managers and store managers were trained under the supervision of the central office in Chicago. A part of Walgreen's business in Minnesota then consisted of the manufacture and sale of ice cream. The gross annual sales from this source in Minnesota were approximately $200,000, of which $4,000 came from sales outside the state. Taxpayer's gross Minnesota sales of all other products, none of which were manufactured here, were in excess of $4,000,000 annually.

Under Walgreen's separate accounting method for the years in question, all sales from its Minnesota stores, its warehouse in Minneapolis, and its ice cream plant there were included in its gross sales figures. Thereafter, the cost of goods sold was deducted from gross sales, and to the resulting figure items of other income not in dispute were added. From this result expenses and other deductible items were subtracted. We shall not attempt to set out in detail a compilation submitted by Walgreen which indicated certain differences in net income attributable to Minnesota as determined under its separate accounting system and as determined under the three-factor formula applied by the commissioner. On appeal the taxpayer contended that (a) by his application of the three-factor formula the commissioner taxed income not attributable to its activities in Minnesota in contravention of the due-process clause of U. S. Const. Amend. XIV; (b) where it produced only about $200,000 worth of ice cream annually in its Minneapolis plant, all of which was sold to Minnesota customers except $4,000

worth sold outside the state, and where its sales of other products in Minnesota were in excess of $4,000,000, it was error to determine that under § 290.19, subd. 1(1), its business was that of manufacturing so as to compel application of the three-factor formula referred to in the statute; (c) taxpayer's separate accounting method established that after deducting from its gross Minnesota income expenses actually incurred in Minnesota, non-Minnesota income was being unlawfully taxed as a result of the application of the three-factor formula; and (d) the evidence compelled a finding that taxpayer's separate accounting method properly and fairly reflected the portion of its taxable income assignable to Minnesota and hence should have been applied by the commissioner in determining its taxable income in this state.

In that case the taxpayer did not assign as error or challenge the court's finding that its business was a unitary one. We said that the evidence amply supported such a finding, citing Western Auto Supply Co. v. Commr. of Taxation, *supra*.[2] With respect to the three-factor formula, we said that if the evidence supported a finding that Walgreen's business consisted of manufacturing in Minnesota for the sale of products within and without the state, the statute required the commissioner to apply it in determining net income attributable to Minnesota. We said also that if taxpayer was not so engaged, the three-factor formula was applicable under § 290.19, subd. 1(2)(b), if it more fairly reflected the portion of taxpayer's net income attributable to Minnesota than did the sales formula or the separate accounting method. We upheld the commissioner's application of the three-factor formula on that basis, making it unnecessary to determine whether Walgreen was in the business of manufacturing within the concept of § 290.19, subd. 1 (1) (a, b, c).

The three-factor formula has been upheld on numerous occasions as against the separate accounting method. Butler Bros. v. McColgan, 315 U. S. 501, 62 S. Ct. 701, 86 L. ed. 991; Crane Co. v. Carson, 191 Tenn. 353, 234 S. W. (2d) 644, certiorari denied, 340 U. S. 906, 71 S. Ct. 282, 95 L. ed. 655; Western Auto Supply Co. v.

[2]Both parties in the Walgreen case conceded that the sales formula alone as defined in § 290.19, subd. 1(2)(a), was not applicable.

Commr. of Taxation, *supra*.[3] It has been upheld even where the separate accounting method has attributed a lower or no-taxable income to the taxing state. Butler Bros. v. McColgan, *supra*. It was held in State Tax Comm. v. John H. Breck, Inc. 336 Mass. 277, 144 N. E. (2d) 87, that the fact that the application of the three-factor formula may result in some overlapping of measures of net income as between states was not fatal to the honest efforts of a state to determine what would be a fair approximation of the income of a multistate unitary business.

A certain discretion is vested in the commissioner under § 290.19, subd. 1(2)(b), to determine whether application of the three-factor formula fairly and properly reflects the net income attributable to Minnesota of taxpayer's operations, which he and subsequently the board found to be a unitary business, or whether the separate accounting method would more accurately reach this objective. Western Auto Supply Co. v. Commr. of Taxation, *supra*; Walgreen Co. v. Commr. of Taxation, *supra*.

It is our opinion that the commissioner acted properly within his discretion when he applied the three-factor formula. Butler Bros. v. McColgan, *supra*; Western Auto Supply Co. v. Commr. of Taxation, *supra*; Walgreen Co. v. Commr. of Taxation, *supra*. His determination was approved by the Board of Tax Appeals. In reviewing an order or determination of an administrative board, we will go no further than to determine whether it kept within its jurisdiction; whether it proceeded on a correct theory of law; whether its action was arbitrary, oppressive, or unreasonable, and represented its will and not its judgment; and whether the evidence was such that the board might reasonably make the order or determination it did. Western Auto Supply Co. v. Commr. of Taxation, *supra*. So reviewed, it is our opinion that the board's determination affirming the commissioner's application of the three-factor formula as properly and fairly reflecting the net income of the taxpayer assignable to Minnesota was justified by the evidence and must be affirmed.

---

[3]Other authorities are cited in Walgreen Co. v. Commr. of Taxation, 258 Minn. 522, 104 N. W. (2d) 714.

Taxpayer contends that its business differed greatly from that of Western and Walgreen. Taxpayer claims it had independent purchasing departments in the Chicago and Twin Cities stores, whereas Western and Walgreen each had one central purchasing department; that it had no warehouse, but warehouses played a vital role in the functioning of their businesses; that its operations were highly localized with six stores in two communities, whereas Western operated 257 stores in some 30 states and Walgreen had 191 stores in 9 states and both had a number of agency stores; that each of taxpayer's stores received its shipments directly from the manufacturer, while Western and Walgreen received theirs from company warehouses; that the management of taxpayer's stores was independent and they were autonomous in each area of operation with officers equally divided in both localities, but with Western and Walgreen practically all executive and managerial functions were carried on in home offices outside of Minnesota; that taxpayer's Chicago and Twin Cities stores handled their own personnel matters, but Western and Walgreen trained their store personnel outside of Minnesota; and, finally, that taxpayer's Chicago and Twin Cities stores kept their own accounting records, whereas the accounting functions of Western and Walgreen were centralized in their home offices.

The commissioner argues that taxpayer's business is clearly unitary, as that term is used in decided cases, and that the testimony before the board demonstrated clearly interdependence and mutual benefit between the in-state portion of taxpayer's operation and the out-state portion. He points to testimony that with respect to some high-volume items taxpayer maintained the same lines in all its stores, whether situated in Minnesota or elsewhere; that a change in major high-volume lines was never made by the entire company or by a particular store without the agreement of all the various branches; that it was mutually beneficial to all branches of the business to carry the same lines in all stores; that these advantages resulted in better service on reorders because of larger volume, the possibility of an interchange of advertising material between the various stores, and price concessions or volume discounts on purchases. It was pointed out in Butler

Bros. v. McColgan, *supra,* that the benefits of lower prices through volume purchases are enough in and of themselves to render a business unitary for the purposes of allocation.

Taxpayer contends, however, in a supplemental brief filed with this court, that our decision in Skelly Oil Co. v. Commr. of Taxation, 269 Minn. 351, 131 N. W. (2d) 632, handed down since the filing of the original briefs in this case, is applicable because, according to taxpayer, it "thwarts the attempts of the Minnesota Department of Taxation, aided and abetted by the Board of Tax Appeals, to reach income which was clearly earned outside of Minnesota."

We cannot agree that the principles applied in Skelly Oil Co. v. Commr. of Taxation, *supra,* are equally applicable here. In the Skelly case, we found that taxpayer was engaged in *two businesses,* i. e., the production and the refining and marketing of crude oil and oil products. Taxpayer argues that in a general sense Skelly was engaged in but one business, the oil business, but that on analysis the board and this court concluded that it was engaged more precisely in oil production and oil marketing. Taxpayer then argues that it can be said that it also was engaged only in one business, the sale of clothing at retail, but that a careful reading of the record demonstrates that it was engaged in *two separate and distinct businesses,* i. e., the sale of clothing at retail *in Minnesota* and the sale of clothing at retail *in Illinois.*

We held in the Skelly case that the determination of the Board of Tax Appeals that part of taxpayer's production income was apportionable to Minnesota had no support in the findings and that the evidence and the record as a whole did not reasonably support such a determination. We therefore held that the board reached sound conclusions in determining that Skelly's production operations and its manufacturing and marketing operations constituted separate businesses. In the instant case, however, the board's finding that taxpayer's business was unitary had support in the evidence of some interdependence of various parts of its business and of benefits flowing between various parts. We conclude that the Skelly case is not applicable here.

The order of the board affirming the commissioner's application

of the three-factor formula is justified by the evidence upon which it made its findings.

Affirmed.